UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AMM, § § § Petitioner, § § v. § § BOBBY THOMPSON, Warden, South § Texas ICE Processing Center; MIGUEL § VERGARA, Field Officer Director, San § Antonio Field Office, United States § Immigration and Customs Enforcement; § TODD M. LYONS, Acting Director, § United States Immigration and Customs § Enforcement; KRISTI NOEM, Secretary § of Homeland Security; PAMELA BONDI, § United States Attorney General, in Their § Official Capacities, § § Respondents. § | SA-25-CV-1210-FB (HJB) |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

Before the Court is Petitioner AMM's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket Entry 1), and Motion for Temporary Restraining Order and Preliminary Injunction Ordering Release Pending Final Judgment (Docket Entry 5). Pretrial matters have been referred to the undersigned pursuant to 28 U.S.C. § 636(b). (*See* Docket Entry Dated Oct. 21, 2025.) The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241. For the reasons set out below, I recommend that the petition (Docket Entry 1) be **GRANTED IN PART** and **DENIED IN PART**, and the motion for preliminary relief (Docket Entry 5) **DISMISSED AS MOOT**.

I. **Background.**

The facts in this case are not in dispute. Petitioner is an Argentine national who entered the United States on September 13, 2023, pursuant to the Visa Waiver Program ("VWP"). (Docket Entry 1, at 3; Docket Entry 15, at 3; Docket Entry 15-1, at 3.) The VWP allows eligible aliens "to apply for admission to the United States for [90] days or less as non-immigrant visitors without first obtaining a visa." *McCarthy v. Mukasey*, 555 F.3d 459, 459–60 (5th Cir. 2009). But in exchange, such aliens "must waive any right to contest" any action for removal, "other than on the basis of an application for asylum." *Id.* at 460 (citation modified). "This waiver is the linchpin of the program; it allows VWP participants to enter the country expeditiously while streamlining their removal." *Lavery v. Barr*, 943 F.3d 272, 273 (5th Cir. 2019).

Petitioner's admission under the VWP was "for a temporary period not to exceed December 11, 2023." (Docket Entry 15-1, at 4.) Prior to the expiration of this period, Petitioner filed an application for asylum with USCIS. (*See* Docket Entries 1-16.) USCIS received her application on December 3, 2023, and informed Petitioner that she "may remain in the U.S. until [her] asylum application is decided." (Docket Entry 1-2, at 2.) Petitioner subsequently received employment authorization (*see* Docket Entry 1-3), obtained a Texas driver's license (*see* Docket Entry 1-4), and was commissioned as notary public by the State of Texas (*see* Docket Entry 1-5).

On September 15, 2025, the Assistant Director of the ICE Field Office in Pflugerville, Texas, issued a Visa Waiver Program (VWP) Final Administrative Removal Order ("VWP FARO") against Petitioner. (Docket Entry 15-1.)[1] Later that day, she was taken into ICE custody. (*See*

---

[1] The undersigned notes that the issuance of a VWP FARO by an immigration officer accords with the applicable regulation. That regulation provides that removability of VWP overstays "shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effective without referral of the alien to an immigration judge for a determination of deportability." 8 C.F.R. § 217.4(b)(1) (Nov. 28, 2009); *see Zine v. Mukasey*, 517

Docket Entry 1-6, at 4.)  While in custody, Petitioner was notified that she had been ordered removed pursuant to § 217 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1187, for having "remained in the United States beyond December 11, 2023," in violation of the conditions of her admission under the VWP.  (*See* Docket Entry 15-1.)  Respondents referred Petitioner's asylum claim to an immigration judge on October 21, 2025, where it remains pending.  (*See* Docket Entry 38, at 2; Docket Entry 40, at 1.)

On September 26, 2025, Petitioner filed her petition for a writ of habeas corpus, seeking release from custody or, in the alternative, an immediate bond hearing.  (*See* Docket Entry 1.)  That same day, Petitioner separately filed a motion for temporary restraining order and preliminary injunction, asking the Court to temporarily grant her the same relief requested in her petition.  (*See* Docket Entry 5.)  Respondents responded to both the habeas petition and the motion for preliminary relief (*see* Docket Entries 14 and 15), and Petitioner filed a reply in support of her motion for preliminary relief (Docket Entry 17).

At a conference on October 24, 2025, the undersigned inquired whether the preliminary relief and ultimate relief sought by Petitioner were identical.  In response, both parties agreed that the relief requested was identical; in light of the undisputed facts and full briefing, they both indicated that the Court could resolve both the pending motion and the habeas petition without further briefing or hearing.  Petitioner's counsel did, however, urge that preliminary relief was still warranted due to Petitioner serious health condition and hospitalizations while in ICE custody. The undersigned accordingly took both matters under advisement, and subsequently ordered the parties to file supplemental briefing (*see* Docket Entry 37) regarding the finality of Petitioner's

---

F.3d 535, 543 (8th Cir. 2008) ("Aliens admitted under the VWP are not eligible for removal proceedings, only asylum-only proceedings.").

3

VWP FARO in light of recent Supreme Court precedent—*viz.*, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), and *Riley v. Bondi*, 606 U.S. 259 (2025)—which the parties have now submitted (*see* Docket Entries 38 and 40).

## II. Discussion.

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested, and whether Petitioner is entitled to that relief on the merits. Accordingly, this Report and Recommendation discusses the Court's jurisdiction before turning to the merits. *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first.")

### A. *Jurisdiction.*

Respondents argue that the Court lacks jurisdiction over Petitioner's case because it cannot enjoin the execution of a final order of removal. (See Docket Entry 14, at 3.) Respondents are correct that "the REAL ID Act has divested federal courts of jurisdiction over § 2241 petitions attacking removal orders." *Rosales v. Bureau of Immigr. & Customs Enf't*, 426 F.3d 733, 736 (5th Cir. 2005). But Petitioner does not attack her removal order. Rather, she challenges her detention during the pendency of her asylum-only proceedings. (*See* Docket Entry 1, at 7–13; Docket Entry 5, at 7–16.) Contrary to Respondent's arguments, such challenges are within the Court's jurisdiction. *See, e.g., Vargas v. U.S. Dep't of Homeland Sec.*, No. 1:17-CV-356, 2017 WL 962420, at *2 (W.D. La. Mar. 10, 2017) ("The right to challenge detention pending removal is independent of the right to challenge a final order of removal."); *Kim v. Obama*, No. EP-12-CV-173-PRM, 2012 WL 10862140, at *1 (W.D. Tex. July 10, 2012) ("The Real ID Act does not . . . preclude habeas review of challenges to detention that are independent of challenges to removal orders."). Accordingly, this Court has jurisdiction to consider Petitioner's claims.

**B.  *The Merits.***

As noted above, both Petitioner's habeas action (Docket Entry 1) and her motion for preliminary relief (Docket Entry 5) have been referred to the undersigned.  At the status hearing the parties agreed that the preliminary relief sought is identical, albeit temporary, to the ultimate relief sought in the habeas petition, and that the merits of the petition have been fully briefed and present purely legal issues for the Court's resolution.  Accordingly, the undersigned proceeds directly to the merits of the habeas petition and does not address separately the motion for preliminary injunctive relief.  *See Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950096, at *5 (S.D. Tex. Oct. 3, 2025) (granting petition for writ of habeas corpus and denying motion for identical preliminary relief as moot); *Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *4 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) (same).

The petition presents both a statutory and a constitutional basis for relief.  (*See* Docket Entry 1.)  However, if Petitioner succeeds on her statutory argument, it would be unnecessary for the Court to reach the constitutional issues.  Because the Court should find that Petitioner is entitled to relief on the basis of the applicable statute, this Report and Recommendation does not include any further discussion of the parties' constitutional dispute.  It does, however, separately consider the scope of relief to which Petitioner should be entitled.

    1.  *Whether Petitioner Is Entitled to Relief Based on the Immigration INA.*

The statutory dispute as to whether Petitioner's detention during the pendency of her asylum-only proceedings is mandatory turns on whether she is detained under § 1226(a) or § 1231(a)(2).  "If the answer is § 1226," as Petitioner argues, then she "may receive a bond hearing before an immigration judge," and, hence, her detention is not mandatory.  *See Guzman Chavez*, 594 U.S. at 526.  "If the answer is § 1231," as Respondents argue, then she "is not entitled to a

bond hearing," and, hence, her detention is mandatory. *See id.* For the reasons set out below, the Court should find Petitioner is detained pursuant to § 1226(a), rather than § 1231(a)(2).

Section 1226(a) permits, but does not require, detention "pending a decision on whether the alien is to be removed from the United States." *Guzman Chavez*, 594 U.S. at 533 (citation modified). Section 1231(a)(2) is the statutory basis for detention once "an alien is ordered removed and enters the removal period, which begins on the date the order of removal becomes administratively final." *Id.* (citation modified). Considering the two statutes together this means that "§ 1226 governs the detention of aliens until § 1231's removal period begins," and "the removal period begins when an alien is ordered removed, and the removal order becomes administratively final." *Id.* at 533–34. Accordingly, whether Petitioner is statutorily entitled to relief under § 1226 turns on "whether [she] w[as] ordered removed and whether [her] . . . removal order[] w[as] administratively final." *Id.*

The VWP FARO in this case is certainly an order of removal; it states that Petitioner is "removable as charged [under the VWP] and order[s] that [she] be removed from the United States. . . . to: Argentina." (Docket Entry 15-1, at 3.) The only question, then, is whether the VWP FARO in this case is administratively final. While the Fifth Circuit has not directly addressed the issue, the unanimous authority from other circuits suggests that, despite its title, Petitioner's VWP FARO is not actually administratively final. And the Supreme Court's more recent decisions in *Guzman Chavez* and *Riley*, while not directly applicable, tend to confirm the circuits' analysis.

*Circuit precedent*. Those courts of appeals that have considered the issue in the past have all held that a FARO in a VWP case is not final until the alien's asylum application, if any, has been denied. *See, e.g.*, *Nicusor-Remus v. Sessions*, 902 F.3d 895, 898 (9th Cir. 2018) ("[T]he denial of an asylum application in asylum-only proceedings 'finalizes' DHS's removal order of a VWP

6

entrant because the VWP entrant is entitled to no other forms of relief."); *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008) (Easterbrook, J.) (construing "the final disposition of an asylum-only proceeding" in VWP case as the "final order[] of removal"); *Shehu v. Atty. Gen. of U.S.*, 482 F.3d 652, 656 (3d Cir. 2007) ("[D]enial of a VWP applicant's petition for asylum . . . constitutes 'a final order of removal,' . . . as the alien is entitled to no further process before deportation."); *Kanacevic v. I.N.S.*, 448 F.3d 129, 134 (2d Cir. 2006) ("[B]ecause of the truncated rights available to a Visa Waiver Applicant, the denial of the asylum application is in effect a final order of removal."); *Nreka v. U.S. Atty. Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005) ("The denial of an asylum application in a VWP proceeding is so closely tied to the removal of the alien that it can be deemed. . . a final order of removal."); *Salomao v. Garland*, No. 20-1856, 2022 WL 1301773, at *3 (4th Cir. May 2, 2022) ("[D]enying a VWP participant's relief in an asylum-only proceeding functions like a final order of removal.").  As one appellate court explained, courts must distinguish between "the 'removal order' (*i.e.*, DHS's determination that a VWP entrant is removable)" and "the action that makes the removal order 'final'"—the immigrant judge's denial of asylum (or any other form of available relief).  *Nicusor-Remus*, 902 F.3d at 898.  Thus, under the reasoning of these courts , if a VWP participant applies for asylum, the VWP FARO will not become final unless, and until, the asylum claim is denied.

    *More recent Supreme Court decisions.*  As noted above, the undersigned ordered additional briefing from the parties to address the impact, if any, of the Supreme Court's decisions in *Guzman Chavez* and *Riley*, on the finality of a VWP FARO during the pendency of asylum-only proceedings.  (*See* Docket Entry 37.)  After carefully reviewing those decisions, and the parties' supplemental briefing, the undersigned finds that *Guzman Chavez* and *Riley* are factually

7

distinguishable from this case, but they nevertheless tend to confirm the consensus view among the circuit courts.

Both *Guzman Chavez* and *Riley* considered the effect of withholding-of-removal proceedings on the finality of removal orders. *Guzman Chavez* considered the issue in the context of detention under § 1231, and it held that a pending withholding-only proceeding does not affect the administrative finality of a removal order. 594 U.S. at 539–40. Considering the issue in the context of the deadline to petition a court of appeals for review of a final order in "streamlined removal proceeding," *Riley* extended *Guzman Chavez* beyond administrative finality to finality of the removal order in general,. 606 U.S. at 271. According to *Riley*, a removal order becomes final under the INA, administratively or otherwise, "at the earlier of two points: (1) a determination by the Board of Immigration Appeals ("BIA") affirming such order, or (2) the expiration of the period in which the alien is permitted to petition the BIA for review of the order." 606 U.S. at 267 (citing 8 U.S.C. § 1101(a)(47)(B)). *Riley* concluded that, "because an alien in streamlined removal proceedings cannot seek review of his FARO before an IJ or the BIA, the period to seek review expires as soon as the FARO is issued—meaning that the order becomes final immediately upon issuance." *Id.* (citation modified).

Based on *Guzman Chavez* and *Riley*'s discussions of finality, it might appear that the VWP FARO in this case is administratively final; after all, immigrations facing removal under the VWP are in streamlined removal proceedings.[2] However, *Guzman Chavez* and *Riley* are distinguishable,

---

[2] *See, e.g.*, *Lavery*, 943 F.3d at 273 ("The VWP . . . . allows VWP participants to enter the country expeditiously while streamlining their removal."); 8 C.F.R. § 217.4(b)(1) (Nov. 28, 2009) ("[R]emoval . . . [of] an alien who was admitted as a [VWP] visitor . . . shall be determined by [DHS] . . . and shall be effective without referral of the alien to an immigration judge for a determination of deportability, except that an alien who was admitted as a [VWP] visitor who applies for asylum in the United States must be issued a Form I-863 for a[n] [asylum-only]

because neither of those cases involved a petitioner who was seeking asylum. As noted above, *Guzman Chavez* and *Riley* involved withholding of removal, a materially different form of relief; moreover, the reasoning in *Guzman Chavez,* which *Riley* does not disturb, makes clear that that an ongoing asylum-only proceeding, unlike a withholding-only proceeding, does affect the finality of a FARO.

Most of the majority opinion in *Guzman Chavez* is dedicated to explaining why withholding-only proceedings do not affect the finality of a FARO for purposes of detention under § 1231. *See* 594 U.S. at 535–40. The Court explained that, even if a petitioner prevailed on the withholding issue, they would still be removable:

> If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, and not *from* the United States. The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute. And the statute provides numerous options: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the United States; and finally, any country willing to accept the alien. In short, withholding-only relief is country-specific. It relates to *where* an alien may be removed. It says nothing, however, about the antecedent question *whether* an alien is to be removed from the United States.

*Id.* at 535–36 (citations omitted). This discussion in *Guzman Chavez* clearly implies that, for purposes of § 1231, a FARO is not final when an alien is seeking relief which, unlike withholding, *does* say something about "*whether* an alien is to be removed from the United States." *Id.* at 536.

Asylum fits the bill. Unlike withholding of removal (or Convention Against Torture ("CAT") relief) which "just prevent removal to a particular country"—asylum "prevents the removal from going forward" altogether. *See Ruiz-Perez v. Garland*, 49 F.4th 972, 979 (5th Cir.

---

proceeding in accordance with 8 CFR 208.2(c)(1) and (c)(2)"); *Zine v. Mukasey*, 517 F.3d 535, 543 (8th Cir. 2008) ("Aliens admitted under the VWP are not eligible for removal proceedings.").

2022).  Indeed, the Supreme Court in *Guzman Chavez* specifically "distinguished withholding-only relief from asylum," explaining that the latter is unique in that it "permits an alien *to remain in the United States* and to apply for permanent residency after one year."  594 U.S. at 535.  A grant of asylum also means that the alien "can work in the United States" and "may travel abroad" without any consequence to their ability to return to the United States.  *Ruiz-Perez*, 49 F.4th at 979 (citation modified).  None of this reasoning is affected by *Riley*.

As the above discussion indicates, the Supreme Court's articulated reason for holding that withholding-of-removal proceedings do not affect the finality of a removal order—*i.e.*, that such relief "says nothing . . . about *whether* an alien is to be removed from the United States"—suggests that ongoing asylum-only proceedings render a FARO not administratively final under § 1231.  *See Guzman Chavez*, 594 U.S. at 536.  This reasoning accords with the prior circuit precedent outlined above, which uniformly indicates that a VWP FARO is not final unless, and until, the asylum-only proceedings have concluded in a denial of asylum.[3]

Based on the foregoing, the Court should find that, while Petitioner's asylum-only proceeding is ongoing, the VWP FARO in her case is not a final order of removal for purposes of transitioning Petitioner from a § 1226(a) discretionary detainee to a § 1231(a)(2) mandatory detainee.  Accordingly, the Court should grant Petitioner relief without addressing the parties' constitutional arguments.

---

[3] Since the Supreme Court issued its decisions in *Guzman Chavez* and *Riley*, only one court has considered the finality of a VWP FARO—*D'Ambrosio v. McDonald*, No. 25-10782-FDS, 2025 WL 2229361, at *1 (D. Mass. Aug. 4, 2025). While the *D'Ambrosio* court found that the VWP FARO "immediately rendered . . . removal 'administratively final' under § 1231(a)(1)(B)(i)," the case is distinguishable because the petitioner had not sought asylum. *See* 2025 WL 2229361, at *3 n.2.

2. *The Appropriate Relief.*

The only remaining issue is the proper scope of relief. Petitioner asks for "immediate release" or, in the alternative, that the Court order "respondents to provide [her] with a bond hearing expeditiously." (Docket Entry 1, at 16.) Respondents have taken no position in this case as to which form of relief they would consider more appropriate. However, in another immigration habeas case pending before this Court, these same Respondents expressly requested that, if relief be granted, the Court simply order release as opposed to ordering a hearing before the immigration judge. *See Becerra Vargas v. Bondi*, No. SA:25-CV-1023-FB, Report and Recommendation at 9–10 (W.D. Tex. Nov. 12, 2025). The undersigned agreed with Respondents' request in *Becerra Vargas*, *see id.*, and the undersigned recommends similar relief in this case.

The question presented in *Becerra Vargas* was whether an alien who had been present in the United States for over a decade after entering without inspection was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), or whether § 1226(a) governed his detention, entitling him to a bond hearing. *See Becerra Vargas*, Report and Recommendation at 6. The immigration judge—bound by very recent BIA precedent—concluded that the petitioner was ineligible for a bond hearing because his detention was mandatory under § 1225(b)(2)(A). *See id.* at 2. Following the majority of court precedent, the undersigned disagreed, finding that the petitioner was detained pursuant to 1226(a). *See id.* at 7–9.

In *Becerra Vargas*, the respondents requested that, if the Court were to side with the petitioner, it simply order his release because requiring a hearing "would require the immigration judge to do that which, in light of BIA precedent, the judge would not believe he had any authority to do." *Becerra Vargas*, Report and Recommendation at 10 (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) ("The immigration Judge . . . lacked authority to hear the

11

respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under . . . § 1225(b)(2)(A).").)

The situation is essentially the same here. Citing 8 C.F.R. § 1208.2(c), the BIA has held that immigration judges lack jurisdiction to hold bond redetermination hearings for VWP overstays in asylum-only proceedings. *See Matter of A-W-*, 25 I&N Dec. 45, 48 (BIA 2009). Petitioner has challenged the BIA's holding, pointing out that virtually every court to confront this issue has held that *Matter of A-W-* is erroneous and entitled to no deference. (*See* Docket Entry 1, at 8–9 (collecting cases).) Respondents have not provided any briefing regarding § 1208.2(c) or *Matter of A-W-*, instead arguing solely that Petitioner's detention is mandatory under § 1231.[4] Under the circumstances, it appears that this is another case in which ordering a hearing would require "the immigration judge to do that which, in light of BIA precedent, the judge would not believe he had any authority to do." *See Becerra Vargas*, Report and Recommendation at 10; *cf.* 8 C.F.R. § 1003.1 (Aug. 28, 2025) ("[D]ecisions of the Board . . . are binding on all . . . immigration judges in the administration of the immigration laws of the United States."). Accordingly, immediate release is the proper remedy in this case, for the same reasons it was in *Becerra Vargas*.[5]

---

[4] In ordering briefing on *Guzman Chavez* and *Riley*, the undersigned called the parties' attention to 8 C.F.R. § 1208.2(c) and advised Respondents to be prepared to address it if there were a further hearing in the case. (*See* Docket Enry 37, at 2 n.1.) Given the position taken by the respondents in *Becerra Vargas*, however, it does not appear further consideration of the regulation is needed at this time.

[5] Petitioner also requests an award of reasonable costs and attorney's fees. (*See* Docket Entry 1, at 16.) The Petitioner does not any cite authority permitting this relief; the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which otherwise can provide this remedy, "does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).


### III.     Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket Entry 1) be **GRANTED IN PART**, and that Respondents be **ORDERED** to release Petitioner from their custody during the pendency of her asylum-only proceedings.  In all other respects, I recommend that the Petition be **DENIED**.  Consequently, I further recommend that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Docket Entry 5) be **DISMISSED AS MOOT**.  *See supra* n. 3.

### IV.     Notice of Right to Object (Within 7 Days).

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  While written objections to a Report and Recommendation are typically due **within 14 days** of a party's receipt of the same, that deadline can be modified by the Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In this case, the Court has partially granted Petitioner's unopposed motion to do just that.  (*See* Docket Entry 31, at 5; Text Order Dated Oct. 24, 2025.)  Accordingly, the parties must file any written objections **within seven (7) days** of their receipt of this Report and Recommendation.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on November 18, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge